CENTRAL ADVERTISING COMPANY v.
STATE HIGHWAY COMMISSION.

1. HIGHWAYS—STATE HIGHWAY COMMISSION—CONSTITUTIONAL LAW.
   The State highway commission is a constitutional body which
   operates the department of State highways, and the commis-
   sion's function and powers are defined by law (Const 1963,
   art 5, § 28; PA 1964, No 286).

2. HIGHWAYS—STATE HIGHWAY COMMISSION—EXCESS LAND.
   State highway commission whenever it obtains the whole of a
   parcel of land has the right to sell and convey portion of
   property not needed on whatever terms it deems proper and
   may retain a limited estate in lands for highway purposes
   (CL 1948, § 213.194).

3. HIGHWAYS — STATE HIGHWAY COMMISSION — PROPERTY — SIGN-
   BOARDS — SCENIC AREAS.
   The State highway commission's right to acquire property does
   not include a specific power to acquire signboard easements
   upon and over the adjacent countryside, nor can the highway
   department's authority to acquire land for rest areas, scenic
   areas, and scenic lookouts be construed to be an open-end
   grant of authority to the department to acquire all land
   which can be seen by the travelling public (MCLA §§ 213.171,
   213.361).

4. HIGHWAYS—SCENIC AREAS—STATE HIGHWAY DEPARTMENT—PROP-
   ERTY—LIMITATIONS.
   *Scenic area,* as used in statute authorizing purchase and con-
   demnation of property for public highway purposes, refers to

---

* Continued from volume 382 Mich.

·REFERENCES FOR POINTS IN HEADNOTES
[1] 39 Am Jur 2d, Highways, Streets and Bridges § 13 *et seq.*
[2] 26 Am Jur 2d, Eminent Domain § 115.
[3–6] 26 Am Jur 2d, Eminent Domain § 136.

a definable area, which is acquired by the State highway department to be preserved in a scenic state for the delight of the motoring public, but does not include private property visible from the highway upon which the department wishes to place scenery limitations (MCLA § 213.361).

5. HIGHWAYS — OUTDOOR ADVERTISING — RESTRICTIONS — STATUTES — SCENIC BEAUTY.

Outdoor advertising is recognized by statute authorizing purchase and condemnation of property for public highway purposes as a legitimate commercial use of private property and imposes prohibitions and controls upon such advertising with the purpose of making clear what is reasonably necessary for the restoration, preservation, and enhancement of scenic beauty along the highway (PA 1966, No 333).

6. HIGHWAYS—STATE HIGHWAY DEPARTMENT—BILLBOARDS—EASEMENTS—RESTRICTIVE COVENANTS—APPEAL AND ERROR.

The highway department may acquire billboard easements through condemnation, purchase, gift, or exchange and it may retain easements in its deeds of excess lands, but only to the extent such easements conform to the regulatory scheme of the highway beautification act, and where a restrictive covenant proposed to be included in the sales of excess land does not meet this test, a summary judgment for the State highway commission in an action to restrain the proposed sale is properly reversed (PA 1966, No 333).

Appeal from Court of Appeals, Division 2, Lesinski, C. J., and T. G. Kavanagh and Foley, JJ., reversing Ingham, Sam Street Hughes, J. Submitted May 8, 1969. (Calendar No. 18, Docket No. 52,120.) Decided December 8, 1969.

12 Mich App 314, affirmed.

Complaint by Central Advertising Company, a Michigan corporation, against the State Highway Commission for declaration of rights of defendant to impose restrictions against use of land for billboard advertisements. Summary judgment for

defendant.  Reversed by Court of Appeals.  Defendant appeals.  Affirmed.

*Fraser, Trebilcock, Davis & Foster (John J. Dood,* of counsel), for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Louis J. Caruso* and *James D. Mueller,* Assistant Attorneys General, for defendant.

T. E. BRENNAN, C. J.

## THE CASE.

Involved here is a question of statutory interpretation.

The Michigan State highway commission advertised for sale at public auction certain lands in Livingston county.  These were "excess" lands, socalled, which had been acquired by the commission for highway purposes, but which were no longer needed for such purposes.

In the public announcement of its sale, the commission stated that all sales would be subject to the following restrictive covenant:

"No billboards, signboards, or advertising devices, other than those advertising articles, products, or services sold or manufactured on the premises shall be erected, permitted, or maintained in or upon the lands herein described."

The plaintiff here is a Michigan corporation, which is engaged in the business of outdoor advertising.

On December 15, 1966, one week before the proposed auction sale, plaintiff commenced this action in the Ingham county circuit court, seeking to re-

strain the proposed sale, and asking for a declaration of rights.

Both parties filed motions for summary judgment, and the circuit judge on June 16, 1967, denied the motion of the plaintiff and granted the defendant's motion.

The Court of Appeals reversed. 12 Mich App 314.

## THE ISSUE.

What authority, if any, does the State highway commission have to impose a restrictive covenant in deeds to excess lands, prohibiting the use of such lands for billboard purposes?

## STATUTORY BACKGROUND.

The Michigan State highway commission is a constitutional body,[1] which operates the Michigan department of State highways. The function and powers of the commission are defined by law.[2]

In general, it is the business of the commission to build and maintain highways. All of the powers and duties of the commission are directed toward that end.

Accordingly, the commission is empowered:[3]

"(i) To acquire, own, and hold real and personal property in the name of the state or the commission and to sell, lease or otherwise dispose of or encumber the same in connection with and in furtherance of its duties and the purposes of this act."

Other pertinent statutes provide:

"Whenever the whole of a lot or parcel of land is, or has been, taken by any board or the commis-

[1] Const 1963, art 5, § 28.
[2] PA 1964, No 286 (MCLA § 247.801 et seq., Stat Ann 1969 Cum Supp § 9.216[1] et seq.).
[3] PA 1964, No 286, § 7 (MCLA § 247.807, Stat Ann 1969 Cum Supp § 9.216[7]).

sioner, as provided in the preceding section, such board or commissioner, or his or their successors in office shall have the right, and are hereby authorized, to sell and convey the portion not needed, on whatever terms such board or commissioner may deem proper: Provided, That in those cases where the title to excess lands, acquired by the state highway commissioner under any law of this state, has been taken in the name of the State of Michigan, it shall be lawful for the state highway commissioner, and he is hereby authorized and empowered to sell and convey said lands as if the title thereto had originally been taken in his name as hereinbefore provided."[4]

"When property has been acquired by any city, village, board or the commission it shall have the right to lease, sell and convey any portion thereof not needed, on whatever terms such board or commission may deem proper. A record of all leases and sales, showing the appraised value, the sale price and other pertinent information, shall be kept in the office of the board or commission."[5]

"(m) To do anything necessary and proper to comply fully with the provisions of present or future federal aid acts."[6]

"(n) To do anything necessary and proper to carry out the duties imposed upon it by the constitution and such other duties as may be imposed by law."[7]

Two further statutory references are necessary to complete the backdrop of our discussion.

---

[4] CL 1948, § 213.194 (Stat Ann 1958 Rev § 8.195).

[5] PA 1966, No 295, as amended by PA 1967, No 206, § 27 (MCLA 1969 Cum Supp § 213.387, Stat Ann 1969 Cum Supp § 8.261[27]).

[6] PA 1964, No 286, § 7 (MCLA § 247.807, Stat Ann 1969 Cum Supp § 9.216[7]).

[7] PA 1964, No 286, § 7 (MCLA § 247.807, Stat Ann 1969 Cum Supp § 9.216[7]).

The Federal highway beautification act of 1965[8] provides that the Federal government may, under certain circumstances, withhold funds in the event that billboards are located within certain distances of a highway right-of-way.

A State statute incorporating the Federal billboard limitation has been enacted.[9] It is discussed later in this opinion.

## THE DISCUSSION.

The rights of the commission to acquire property generally, contained in PA 1925, No 352, as amended (MCLA § 213.171, Stat Ann 1958 Rev § 8.171) do not include a specific power to acquire signboard easements upon and over the adjacent countryside. Even the catch-all authority contained in PA 1925, No 352, § 1, subd (h), uses the more limited word "landscaping."

By PA 1966, No 295, § 1(h) (MCLA § 213.361, Stat Ann § 8.261[1]), the highway department's authority to acquire land was broadened. Added to the list of permitted purposes were "rest areas, scenic areas, scenic lookouts."

The acquisition of billboard easements over the visible countryside would not be justified as a "rest area." Similarly, a "scenic lookout" refers to the place from which observation of the countryside can be made not to the scenery being looked upon.

The phrase "scenic area" is a little more difficult to dismiss. No doubt the legislature intended that the department could, under this language, acquire property to be *looked at* by the travelling public as distinguished from stood upon, rested in or parked upon.

[8] 79 Stat 1028 (23 USCA § 131).
[9] PA 1966, No 333 (MCLA § 252.251 *et seq.,* Stat Ann 1969 Cum Supp § 9.391[51] *et seq.*).

But we hesitate to construe the phrase "scenic area" as an open-end grant of authority to the State highway department to acquire all the land which can be seen by the travelling public, even with the naked eye.

Such a concept is as mind-boggling as the view from some of our Michigan highways is breathtaking. For the present purpose it is sufficient to say that the phrase "scenic area" refers to the acquisition *in toto* of some definable area to be preserved in a scenic state for the delight of the motoring public and does not authorize the acquisition of "scenery" easements over private property visible from the highway.

This brings us to the one statute which does limit the use of private property along the highway and does give the department authority to acquire interests in land, for the purpose of highway beautification. PA 1966, No 333 (MCLA § 252.251 *et seq.,* Stat Ann 1969 Cum Supp § 9.391 [51] *et seq.*).

In order to determine whether the restrictive covenant at issue in this case is or is not retained for a valid highway purpose, we must examine Act No 333 in some detail.

It is important at the outset to point out that Act No 333 does *not* declare roadside advertising *per se* a public nuisance.

Quite to the contrary, the act provides:

*"The legislature finds it appropriate to regulate and control outdoor advertising adjacent to the interstate and primary highway systems within this state* and further *that outdoor advertising* adjacent to the interstate and primary system of highways within this state *is a legitimate commercial use of private property and is an integral part of the marketing function and an established segment of the economy of this state."* PA 1966, No 333, § 4

(MCLA § 252.254, Stat Ann 1969 Cum Supp § 9.391 [54]). (Emphasis supplied.)

We do not read Act No 333 as a statute designed to *discourage* this integral part of the marketing function, or to *curtail* this established segment of our State's economy.

Rather, we would expect that the appropriate regulation and control of outdoor advertising will, in the long run, actually encourage and foster the outdoor advertising business, and make its contribution to the flow of goods and services even more significant.

Section 5 belabors the point.

"In order to promote the reasonable, orderly and effective display of outdoor advertising * * * ." PA 1966, No 333, § 5 (MCLA § 252.255, Stat Ann 1969 Cum Supp § 9.391 [55]).

Against this background, we can compare the prohibitions of the statute and the prohibitions of the highway department's restrictive covenant.

The statute limits its prohibitions to 660 feet from the edge of the right-of-way. The covenant goes beyond 660 feet.

The statute permits directional and official signs. The covenant prohibits them.

The statute permits signs advertising the sale or lease of the property upon which they are located. The covenant prohibits them.

The statute permits signs advertising activities conducted or maintained on the property. The covenant permits only signs advertising articles, products, or services sold or manufactured on the premises.

The statute permits general purpose commercial billboards in business areas, under appropriate size, lighting, and spacing regulations. The covenant

prohibits all general purpose commercial billboards, even in business areas.

It may be contended that, over and beyond the regulatory scheme of Act No 333, the highway department is authorized by that statute to acquire billboard easements generally, and therefore the retention of billboard easements by means of restrictive covenants in excess land deeds, is simply the logical corollary of that authorization.

But the highway department is not authorized to acquire billboard easements, except those which are "reasonably necessary for the restoration, preservation and enhancement of scenic beauty within and adjacent to state trunk line highways." PA 1966, No 333, § 2(a) (MCLA § 252.252, subd [a], Stat Ann 1969 Cum Supp § 9.391 [52, subd (a)]).

The legislatively declared policy of Act No 333, sets the outer limits of what is reasonably necessary for the restoration, preservation, and enhancement of scenic beauty along the highway.

## THE HOLDING.

The highway department may acquire billboard easements through condemnation, purchase, gift, or exchange, and it may retain easements in its deeds of excess lands for the same purposes, but only to the extent that such easements conform to the regulatory scheme of PA 1966, No 333.

The restrictive covenant proposed to be included in the sales of excess lands challenged in this litigation does not meet that test.

The judgment of the Court of Appeals is affirmed. Costs to the plaintiff.

DETHMERS, KELLY, BLACK, T. M. KAVANAGH, and ADAMS, JJ., concurred with T. E. BRENNAN, C. J.

T. G. KAVANAGH, J., did not sit in this case.