THE DEPARTMENT OF PUBLIC WORKS AND BUILDINGS, n/k/a THE DEPARTMENT OF TRANSPORTATION, Petitioner-Appellant, *v.* LAWRENCE KELLER, JR., *et al.*, Defendants-Appellees—(J. C. BREMER, Defendant.)

(No. 12408; ▮▮▮▮▮▮▮▮▮▮)

Fourth District—September 5, 1974.

*Rehearing denied October 10, 1974.*

William J. Scott, Attorney General, of Springfield (Roy Frazier and Denis A. McGrady, Sr., Assistant Attorneys General, of counsel), for appellant.

G. R. Schwarz, of Schwarz and Self, of Jerseyville, and Jack E. Horsley and Richard F. Record, Jr., of Craig & Craig, of Mattoon, for appellees.

Mr. PRESIDING JUSTICE SMITH delivered the opinion of the court:

The circuit court of Jersey County dismissed the petition of the Department of Public Works and Buildings (now Department of Transportation) in an eminent domain proceedings to condemn approximately 21.32 acres of land under the provisions of the Illinois Highway Code (Ill. Rev. Stat. 1967, ch. 121, par. 4—201.15). In general terms this statute provides for the acquisition of the fee simple title or a lesser interest in property in order to "provide for the preservation of the natural beauty of areas through which State highways are constructed, * * *." The defendants filed their traverse stating in substance that the State was without authority to acquire this particular piece of land for the simple reason that there had been an operating rock quarry on it for more than 50 years, that natural beauty of the area had thus been eroded and there was no natural beauty to preserve.

The Kellers are the owners of the tract and the defendant Bremer is the tenant. The rock quarry is now in operation and had been for close to a half century or longer. Evidence was taken and the trial court held that this particular statute was not available under the facts in this case for the reason that the authorization legislatively given was to preserve and did not authorize a restoration of the area. This case seems to be one of first impression in Illinois. It may well be asked whether under the circumstances in this case can it be said that a statute authorizing preservation likewise by necessary implication implies the right to restore all or any part of the area to its natural condition.

The area in question is FA Route 155 extending a distance of 15 miles from Alton, Illinois to Grafton, Illinois, with high bluffs on the right side of such highway and the Mississippi River on the left side. The tract here involved is the western end or edge of this 15-mile area. The testimony of the State landscape architect stated in substance that the area in question was regarded as a scenic route and in cooperation with the Federal Government under the Federal Highway Beautification Act of 1965 was intended to make a continuous scenic route between Alton and Grafton. In addition, the specific parcel of land with which we are now concerned would permit the general public to reach the top of the bluff and there observe the confluence of the Mississippi and Illinois Rivers by construc-

tion of a roadway. In connection with this project, the State has acquired an antique shop in the area close to Elsah, Illinois, and a portion of a resort area known as "Chautauqua" as well as some frontage property owned by Principia College, all in this 15-mile area. In response to a question inquiring "just what is the natural beauty of a rock quarry, the witness responded, "Number one, the formation of the rock are still there, and in that particular area it was allowed to remain in that vertical cut and I imagine it's anywhere from 110 to around 200 feet, so you do see complete rock out-cropping." He conceded however that this occurrence had been developed by the very quarrying of the rock on the tract in question, but that any other areas of the 15-mile road segment the same type of view as to the rocks was visible all along the road and in its natural state, and that the rock condition exposed as a result of the quarrying is the only segment that is not in its natural state. The witness likewise stated that the existing natural beauty of the location would necessarily be disturbed by establishing a road through the naturally beautiful area to the site providing a view of the junction of the two rivers.

The defendant, Lawrence Keller, testified as to his ownership, his lease with the defendant Bremer providing for the payment of $3,000 per year for the removal of 30,000 tons of rock annually, plus $.10 per ton for any excess, and that the limestone is a good grade with a high magnesium content used for paving of secondary roads and in fact was used for a highway between Alton and Grafton, as well as other roads.

The trial court held that the statute in question was a preservation statute and not a restoration statute, and that had the legislature intended that there was to be any restoration of the area it would have provided in the statute for such restoration.

It is readily conceded that under recent developments of the law, if the public desires to preserve scenic features of privately-owned lands, the power of eminent domain is available to satisfy that desire. (29A C.J.S. *Eminent Domain* § 63 (1965). In the decision of the United States Supreme Court in *Berman v. Parker*, 348 U. S. 26, 99 L.Ed. 27, 75 S. Ct. 98, Justice Douglas speaking for the entire court said: "The concept of the public welfare is broad and inclusive   *   *   *.   The values it represents are spiritual as well as physical, aesthetic as well as monetary. It is within the power of the legislature to determine that the community should be beautiful as well as healthy, spacious as well as clean, well-balanced as well as carefully patrolled." 348 U.S. at 33, 99 L.Ed. at 38.

■■  In 1965, Congress enacted the Highway Beautification Act. (23 U.S.C. § 319), where it is provided for Federal funding of projects in

connection with the "highway right-of-way and for acquisition of interests in and improvement of strips of land necessary for the restoration, preservation, and enhancement of scenic beauty adjacent to such highways * * *." Following such enactment, the Illinois General Assembly amended the Highway Code to include among the general powers given the Department of Transportation the additional authority "[t]o provide for the preservation of the natural beauty of areas through which State highways are constructed, and to acquire the fee simple title, or such lesser interest as may be desired, including scenic easements, to any land, rights or other property necessary therefor." (Ill. Rev. Stat. 1965, ch. 121, par. 4—201.15.) It seems quite clear that the problem for this court is to determine whether or not the language just quoted is sufficient to authorize the acquisition of a parcel where it is apparent from the facts that a degree of change will be necessary. We think it is clear in Illinois that where a traverse is filed as here, the burden falls upon the petitioner to establish a specific grant of the power to acquire property by eminent domain and that such grant is to be strictly construed. (*Department of Public Works & Buildings v. Ells*, 23 Ill.2d 619, 179 N.E.2d 679; *Department of Public Works & Buildings v. Ryan*, 357 Ill. 150, 191 N.E. 259; *Department of Public Works & Buildings v. Neace*, 13 Ill.App.3d 982, 301 N.E.2d 509.) If we turn to the dictionary, we find that restoration refers to the act of restoring a person or thing to its *former* place of condition. Preservation on the other hand implies a purpose to keep intact or unimpaired or to maintain an existing *condition*. Each is mutually contradictory of the other. In New Jersey, the state is authorized to acquire property for the restoration, preservation and enhancement of scenic beauty. In construing this statute which is of course broader than our own, the court in *Wes Outdoor Advertising Co. v. Goldberg*, 55 N.J. 347, 262 A.2d 199, used the following language: "The Act contemplates that there is a certain basic beauty in natural terrain and vegetation unspoiled by the hands of man, which it proposes to recapture or maintain."

Once again turning to the dictionary, we find that the word "natural" means untouched by man or by the influences of civilization; wild; untutored. Natural condition of the land is used to indicate that the condition of the land has not been changed by any act of a human being. (Restatement of Torts § 363(b) (1965) and § 840 (1939).) Natural condition of land in which it is entitled to lateral sport means a condition which is in no way the result of human activity including soil which has not been cultivated, graded or otherwise disturbed. (*Olson v. Mullen*, 244 Minn. 31, 68 N.W.2d 640.) The word "natural" is the opposite of the word "artificial". (*California Casualty Indemnity Exchange v. Industrial Acci-*

*dent Commission,* 13 Cal.2d 529, 90 P.2d 289.) A bank which has been created by quarrying operations of the previous owner and which, since abandonment of the quarry, surrounded a reservoir was an artificial bank and not a natural bank. (*Schaffer v. Claremont Country Club,* 168 Cal.App.2d 351, 336 P.2d 254.) When a condition on land is created by the action of man, the condition is artificial and not natural for purposes of the application of the attractive nuisance doctrine. *Clarke v. Edging,* 20 Ariz.App. 267, 512 P.2d 30.

In the light of these decisions, the testimony of Mr. Keller becomes important. He testified that here had been quarried about 15% of the total rock present on the tract.

> Question: "And the rock that does exist there is natural formation?"
>
> Answer: "I guess you'd call it natural rock. The good Lord put it there."
>
> Question: "* * * Is there some area that has not been quarried at all?"
>
> Answer: "No, it is in its natural state—overburden."
>
> Question: "What part has never been quarried,"
>
> Answer: "I would guess we've quarried about 15% of it."

It is only this 15% that is artificial or a hole in the ground created by the action of man. All of the remainder is in its natural state with nothing added to or taken from. The Department has concluded that its natural beauty has not been eroded by the quarrying.

■■ Defendant's brief only asserts and the trial court adopted the theory that the statute under construction is a preservation statute and not a restoration statute, and that the testimony indicates that the State intends to do some restoration. We find it difficult to believe that this is a proper conclusion from the facts in this case. It is stipulated that this quarry has been in existence and in operation for 50 years. The testimony is that a lease providing for a payment of $3,000 per year for 30,000 tons and the excess at the rate of $.10 per ton was the operating agreement for more than 14 years. Thus, it would require 450,000 tons of limestone and rock to restore the quarried area to its original natural state. Presumably some rock was quarried during the 35-year period that the plaintiff knew before this property was acquired by him. We think that the State would be hard put even if there was a restoration provision in the statute to restore this property to its natural status. The testimony is clear that nothing was hauled in, but only the rock and limestone hauled out. What is there now, the "Good Lord" put there. The scenic area with which we deal is 15 miles long and it seems a strange construction of this statute to

hold that since the hand of man has touched this property, it cannot be acquired by the State so that its natural beauty can be preserved. Such a construction of the present statute would mean that such acquisition could only be acquired where it is virgin territory, untouched in any manner by the hand of man. Such a narrow construction of the statute would mean that if some enterprising fisherman, hunter or traveler had erected an old-fashioned three-holer for his convenience and comfort, it would contaminate the entire 15-mile strip, because it had been touched by the hand of man. Such a thought engenders the maximum reduxit ad absurdum.

It is further urged that you cannot condemn a going business within the terms of this statute. We would agree that if we were here considering the acquisition by the State of a factory erected and operating on this tract, such acquisition could scarcely be said to be within the spirit or contemplation of the statute. On the other hand, however, there may be areas where the natural state is undisturbed, but where an operating business may be that of grazing cattle, sheep or goats and the acquisition of a scenic area would require the termination of such an enterprise and put the owner out of business. We have already indicated that as quarrying has been continued, the unrestrained force of the elements has operated. In each instance, the public interests and purposes must be weighed as against the rights of an individual. To hold as the Department requests is not an open sesame to the Department of Transportation to acquire all of the land which can be seen by the traveling citizen even with a naked eye, a conclusion that the Michigan court condemned in *Central Advertising Co. v. Michigan State Highway Commission,* 383 Mich. 1, 172 N.W.2d 432. In our judgment, the State here presents a prima facie case for its right to condemn. It has therefore maintained its burden of proof. *City of Evanston v. Piotrowicz,* 20 Ill.2d 512, 170 N.E.2d 569; *Board of Education v. City of Chicago,* 402 Ill. 291, 83 N.E.2d 714; *Board of Trustees v. Lange,* 28 Ill.2d 229, 190 N.E.2d 789.

We do not believe it to be an answer to a petition filed under this statute to say that there are other statutes under which the Department can acquire this property. It is to be noted that our statute includes easements. The testimony shows that that was the original purpose but that it was finally concluded to acquire this property in fee simple absolute. It is also urged that there is no evidence that there is any natural beauty to a gravel pit. Perhaps this may be so, but the evidence is conclusive that the vast majority even of this small area does have natural beauty and the Department as well as the Federal Government has so concluded. It is not an abuse of discretion under the evidence here to make

such a conclusion. We cannot say that the over-all plan and purpose is arbitrary or that. the preservation of the view from this bluff is not beneficial to the public welfare and interest.

Accordingly, the judgment of the trial court is reversed and the cause remanded with directions to proceed in a manner not inconsistent herewith.

Reversed and remanded.

TRAPP and SIMKINS, JJ., concur.