CAVANAGH, J.
(dissenting). I respectfully dissent from the majority opinion. This matter is moot and, consequently, we are without authority to decide it. With regard to the majority’s substantive analysis, the ma *260 jority erroneously decides a matter that should first be addressed by the trial court. Further, by improperly diminishing the degree of inquiry that should be made into the city’s condemnation decision, the majority erroneously concludes that the city’s taking met the standard for public necessity.
I. MOOTNESS
“The principal duty of this Court is to decide actual cases and controversies.” Federated Publications, Inc v City of Lansing, 467 Mich 98, 112; 649 NW2d 383 (2002), citing Anway v Grand Rapids R Co, 211 Mich 592, 610; 179 NW 350 (1920). “To that end, this Court does not reach moot questions or declare principles or rules of law that have no practical legal effect in the case before us unless the issue is one of public significance that is likely to recur, yet evade judicial review.” Id., citing Anway, supra at 610, and In re Midland Publishing Co, Inc, 420 Mich 148, 152 n 2; 362 NW2d 580 (1984).
Today the majority grants the city’s request for entry of a judgment on its condemnation suit, despite the fact that the relief granted has no practical legal effect on the parties to this claim. The city sued to condemn defendants’ land so that it could pursue a particular project. As identified in its condemnation complaint, the city’s project involved constructing a ring road and a connecting spur, the latter of which was designed to rest on defendants’ property.[1] A review of both parties’ statements of facts in their briefs to this Court reveal that the funding for the ring road project was rescinded *261 by the funding agency in 1999. In the briefing, there is nothing declaring, and nothing from which to infer, that if the city prevails on its condemnation claim, it has the present ability and the present intent to pursue the originally intended project.
At oral argument, this Court made several inquiries regarding the project’s status and the potential mootness of this appeal. First, Justice CORRIGAN asked whether there was any reason why this Court could not issue an order allowing the ring road portion of the project to proceed while the spur portion of the project was still under consideration. Counsel for the city responded:
We are now, Your Honor, several years removed from the road project. This was not a piecemeal kind of project. Part . of the reason for the industrial spur, for example was that the Ring Road where it was proposed to connect to Grand River would have been too close to this driveway on Grand River that currently served the Wisne property. That was one of the reasons to have the industrial spur. [Emphasis added.]
Counsel elaborated, “It was difficult at the trial and in addition now, 6 years, 7 years removed from when the project was started, the project itself has kind of been uncertain.” (Emphasis added.)
During defense counsel’s argument, Justice KELLY asked:
You began to develop an idea and you didn’t complete it because you were interrupted. Were you telling us that when Wisne was sold the whole project became uninteresting to the city?
Counsel replied:
It is gone forever and what [counsel for the city] will tell you probably because he has to is that maybe someday it will get built. The reality of the situation, and there were *262 depositions on this point, that Ring Road is gone. And the driveway that they are proposing now would extend to nothing. [Emphasis added.]
Interestingly, on rebuttal, counsel for the city did not contest or deny that there are currently no plans to pursue the project. Rather, he attempted to proffer alternative reasons why this Court should decide this case:
Very briefly, and I’ll stay within the two minutes, the question was raised kind of a mootness kind of question. Here is the city’s response on that. It is true that we have a published Court of Appeals opinion that we think is very much wrong on the issue of public use and what the standard of review is with regard to public use in this kind of case. It’s relevant not just for the future and how trial courts are going to apply it, it’s relevant to this case with regard to is there a responsibility for the attorney fees that were incurred on behalf of the property owner if that case is not dealt with and found to have been correct or incorrect, so there is a reality for this case that needs to be dealt with. It’s not moot. [Emphasis added.][2]
Our jurisprudence regarding mootness has been established for well over a century. There is no question but that a court “ ‘will not take jurisdiction, unless it can afford immediate relief, and certainly will not undertake, where there is no matter in dispute, to declare future rights.’ ” Anway, supra at 609, quoting Woods v Fuller, 61 Md 457, 460 (1884), citing Heald v Heald, 56 Md 300 (1881). “ ‘It will never undertake to decide upon and determine a contingency that may never arise, unless such determination is necessary for the decision of some immediate relief to be granted, and *263 which the court can enforce by a decree.’ ” Id. at 609-610, quoting Woods, supra at 460 (emphasis added). “ ‘Where a complainant has sustained no injury and the object of the action is merely to obtain a declaration as to the constitutionality of a legislative act, the question presented to the court is merely an abstract one and the action will be dismissed.’ ” Id. at 610, quoting Hanrahan v Buffalo Terminal Station Comm, 206 NY 494, 504; 100 NE 414 (1912) (emphasis added).
Counsel for the city expressly stated that relief is sought in this case not because the city intends to pursue the road project, but to overturn what it perceives as an erroneous Court of Appeals opinion and to render guidance for trial courts addressing this issue in the future.[3] We are constitutionally proscribed from granting declarations of this sort, despite whether the mootness inquiry originates from a party. See id.; see also Sibron v New York, 392 US 40, 57; 88 S Ct 1889; 20 L Ed 2d 917 (1968) (recognizing the constitutional genesis of the mootness doctrine). In many instances, both parties may strongly desire a court ruling, despite the moot nature of the case. But where the ruling is purely advisory and has no effect on the parties’ rights, a court is without jurisdiction to entertain the claim. Thus, the majority’s puzzlement over the dissent’s effort to address mootness is puzzling in and of itself.
Although it has been aptly recognized that it “is assuredly frustrating to find that a jurisdictional impediment prevents us from reaching the important merits [of the] issues that were the reason for our agreeing to hear [a] case,” it is simultaneously true that we nonetheless “cannot ignore such impediments for purposes of our appellate review without simultaneously affecting the principles that govern district *264 courts in their assertion or retention of original jurisdiction.” Honig v Doe, 484 US 305, 341-342; 108 S Ct 592; 98 L Ed 2d 686 (1988) (Scalia, J., dissenting). See also the collection of cases noted in City of Warren v Detroit, 471 Mich 941 (2004) (MARKMAN, J., concurring).
The city, having failed to confirm or present any supporting facts that it is currently pursuing the road project for which this taking was ostensibly required, leaves us no choice but to declare that there is simply no controversy remaining and no relief available to the parties. It is unfortunate that the majority does not recognize this. Instead, the majority remands this case for entry of a judgment that the city can condemn defendants’ property. But that judgment is meaningless. The basis for the city’s condemnation complaint, in which it declared that it required defendants’ property for its ring road project, simply no longer exists because the project is defunct. As defense counsel noted, constructing the spur on defendants’ property would be an exercise in futility because there is no ring road with which to connect it. Consequently, the trial court will enter judgment on the city’s condemnation complaint, but the only effect of that judgment will be that the city will know that, if, at some time in the future it decides to pursue the road project, it has a Supreme Court advisory opinion in its favor.
Because of the tremendous restrictions a potential taking puts on a property owner’s ability to use or dispose of his land, the city should not get the benefit, and defendants should not get the detriment, of today’s ruling. In Horton v Redevelopment Comm’n of High Point, 262 NC 306; 137 SE2d 115 (1964), a concurring justice of the North Carolina Supreme Court commented on the appropriateness of requiring a city to show that it has present intent and present ability to *265 begin and complete an urban redevelopment project when the project involves taking private property. The principles espoused in the justice’s thoughtful analysis are equally applicable in the case at hand, and bear repeating:
The urban redevelopment law and the decisions of this Court have given ample notice that the City must show present ability to finance the project. This may be done by the use of funds on hand derived from sources other than taxation, or the City must have the present authority to get the money by means other than by pledging the credit of the City. This is so because the filing of the plan prevents the owner of the property from dealing with it as his own. He cannot improve it, or rent it, or sell it, except at the hazard of being ejected at the will of the Commission. His property is virtually frozen by the plan. The filing of a lawful plan is equivalent to a restriction of the owner’s right to use his property as of the date of the taking of any interest therein. The law wisely provides that authorities may not acquire property until the plan shows financial ability to complete the project. The taking of private property is in derogation of a common law right of the owner, and the act which authorizes the taking must be strictly construed. [Horton, supra at 328 (Higgins, J., concurring).]
Likewise in this case, the majority’s ill-conceived advisory opinion will place defendants’ property in a perpetual state of uncertainty, thus effectively depriving them of their common-law right to use their property as they see fit. Despite that fact, the majority apparently does not feel bound by the well-established principles set out by both the United States Supreme Court and this Court that dictate against reaching the merits of this claim.
The city’s request for this Court’s legal guidance to combat what it alleges is an incorrect Court of Appeals analysis is an insufficient basis on which to disregard *266 the moot nature of this claim. And because the majority insists on issuing an opinion, its grant of “permission” to the parties to raise this matter before the trial court is too little, too late. Plaintiff gets what plaintiff wants: an advisory opinion from this Court on public use and necessity.
Further, the city’s plea for us to decide the matter so that a determination regarding attorney fees can be made is easily rejected. I am unaware of any such exception to the mootness doctrine. Indeed, such an exception would wholly obviate the doctrine because a party to a moot appeal would invariably advance the argument that a decision is required so that one party can seek attorney fees.
Nor is it dispositive that neither party briefed the mootness issue. Because of the constitutional dimensions of jurisdiction, it is incumbent on this Court to identify and reject moot claims even absent a party’s request for us to do so. And it is ascertainable from the existing record that this moot matter, while of arguable public significance, is not susceptible to evading judicial review. While the state funding agency required the city to submit an explanation if the project had not moved forward within two years, and reserved its right to rescind the funding if progress was not being made, rescinding was neither a requirement nor a foregone conclusion.[4] And there is no indication that the agency would have rescinded the funding, rather than granting an extension because of a pending lawsuit, had the city requested such an extension. Thus, there is no sufficient showing that this case is the sort that is “likely to recur, yet evade judicial review.”
*267 Moreover, it is worth noting that in its grant application, the city misrepresented that defendants had agreed to donate the property on which the spur road would be built. By misrepresenting defendants’ intention, the city became entwined in a self-created dilemma. It had to sue for condemnation to fulfill what it alleged was already true, i.e., that property had been donated by the community, and, at the same time, avoid exhausting the funding agency’s patience. Rather than giving the city the benefit of the doubt that, by virtue of a possible time limitation, this case is likely to evade review, I would simply suggest that a taking entity has any number of alternative options available to it. For instance, it could first condemn property and then apply for project funding. Or it could forthrightly inform the agency that condemnation is being pursued so the agency would be aware that the lawsuit may bear on the project’s timing. But the city cannot, as the majority will apparently allow, place itself, by misrepresentation, in its present predicament and obtain judgment on the merits where it has made no showing that it would otherwise be continually precluded from doing so.
With respect to the majority’s statement that defendants have come up with no evidence that the project is not moving forward, I would simply point the majority to the documentary evidence contained in the record, which consists of letters discussing the funding withdrawal for the road project. I believe that evidence, coupled with the statements made at oral argument, should give the majority pause.
Because I believe that the existing record demonstrates that there is no present case or controversy, no meaningful relief to be afforded the parties, and no showing that this matter is likely to evade judicial review, and because the inevitable result of deciding the *268 claim is to shackle defendants’ ability to freely use their land, I would decline to exercise jurisdiction and dismiss the city’s claim as moot.
II. PUBLIC NECESSITY
Because the majority insists on addressing the merits of this moot claim and rendering an advisory opinion that will now control the state of the law, I find it incumbent on me to respond to its analysis.
The majority correctly recognizes that a trial court’s realm of permissible inquiry in a condemnation case is limited to whether a taking entity’s decision regarding public necessity was based on fraud, an error of law, or an abuse of discretion. MCL 213.56(2). The Court of Appeals reviews the trial court’s determination regarding public necessity for clear error. City of Troy v Barnard, 183 Mich App 565, 569; 455 NW2d 378 (1990); Nelson Drainage Dist v Filippis, 174 Mich App 400, 403; 436 NW2d 682 (1989). Likewise, this Court may only reverse a decision of the Court of Appeals if we find the decision clearly erroneous. MCR 7.302(B)(5). Thus, it is our task to determine whether the Court of Appeals clearly erred in affirming the trial court’s decision.
Although the trial court concluded its written opinion by stating that defendants “met their burden of showing that Plaintiff City’s actions evidence a lack of public necessity by fraud, error of law and/or abuse of discretion,” the substance of its opinion demonstrates that it analyzed not public necessity, but public use. The paragraph preceding the trial court’s conclusion summarized the basis for its ruling:
The Court does not dispute the fact that the project proposed by the City of Novi furthers a benefit to the general public. Nonetheless, the Court is persuaded that Plaintiff City’s proposed action will benefit a specific, *269 identifiable private interest and, therefore, the Court is compelled to inspect with heightened scrutiny as outlined by the Michigan Supreme Court in Poletown Neighborhood Council v Detroit, 410 Mich 616 [304 NW2d 455] (1981). The question thus becomes whether the public interest is the predominant interest being advanced; the public benefit of which can be neither speculative nor marginal, but clear and significant. Id. at 635. Applying heightened scrutiny to the overwhelming evidence before this Court, the Court finds that the proposed industrial spur, A.E. Wisne Drive, is primarily for the benefit of Wisne, which benefit predominates over those to the general public.
Thus, the trial court, despite erroneously citing the standard of review for a public necessity challenge, found that the city had not demonstrated that its condemnation was for a public use. Having found so, it was unnecessary for the trial court to inquire into public necessity. Likewise, the Court of Appeals focused solely on public use. Consequently, this Court is without the benefit of any lower court findings on public necessity.[5]
Therefore, were this case not moot, I would first agree with the majority that the Court of Appeals holding that the taking was not for a public use was clearly erroneous for the reasons the majority states. But I would then remand this case to the trial court and instruct it to address defendants’ claim that the city’s determination of public necessity was made on the basis of fraud, error of law, or abuse of discretion.
I would not foreclose defendants’ argument regarding fraud on the basis that defendants showed no “reliance or injury resulting from these acts.” Ante at 253 n 8. A trial court cannot accept the taking entity’s *270 assertion of public necessity when that assertion was fraudulently made. The record shows that plaintiff submitted a grant application misrepresenting that defendants donated their property toward the project. On the basis of that misrepresentation, the state pledged the funding. When the state granted the funding, plaintiff then had no choice but to condemn defendants’ land. And in pursuit of the condemnation, plaintiff claimed that the taking was “necessary.” But plaintiffs’ assertion of necessity was not grounded in a decision that the land in question was “reasonably suitable and necessary” for the project and that this particular piece of property, rather than some other, was required. See State Hwy Comm v Vanderkloot, 392 Mich 159, 176-177; 220 NW2d 416 (1974). Its assertion was made because plaintiff had to make good on its misrepresentation.[6]
Last, I wholeheartedly disagree with the amount of deference the majority affords the government in determining that the taking of a particular piece of property is necessary. As stated, the precise legal question is whether, to complete the project, the government needs all the property involved or needs one particular piece of property rather than some other property. Vanderkloot, supra at 176-177. That review encompasses variables such as “whether the land in question is reasonably suitable and necessary for the ‘improvement’ and whether there is the necessity for taking particular property rather than other property for the purposes of accomplishing the ‘improvement.’ ” Id. at 177-178. Nec *271 essarily, then, there must be some factual demonstration that would allow a court to determine whether an agency abused its discretion in condemning a particular piece of property.
With regard to public necessity, the majority’s first analytical error is in failing to properly apply the clear error standard. City of Troy, supra at 569; Nelson Drainage, supra at 403. Where the trial court did not reach the issue of necessity, it is impossible to determine whether its nonexistent findings were clearly erroneous, despite whether the parties believe that the record is sufficient for us to do so.[7]
In its next analytical error, rather than actually assessing whether the facts demonstrate that the city even undertook a necessity analysis, the majority concludes that even if there were other suitable locations for the spur, the decision to take defendants’ property was not outside the “ ‘principled range of outcomes.’ ” Ante at 254, quoting People v Babcock, 469 Mich 247, 269; 666 NW2d 231 (2003). But defendants presented evidence that the city did not examine any range of outcomes, but rather fixated on this particular piece of property to the exclusion of considering other parcels or even alternatives to condemnation.[8] Thus, a conclusion that the city’s outcome fell within an acceptable *272 “range” is unsupportable. The majority’s overly deferential viewpoint permits a city to prevail against a challenge to public necessity by simply claiming that its taking of a particular piece of property was, in fact, necessary. While deference to a taking agency’s finding is certainly warranted, it cannot be said that as long as an agency claims necessity, its decision cannot be disturbed. Such an approach does not venerate the constitutional principle on which the UCPA is based: a taking can only occur on proof that the taking was both for a public purpose and that the taking of a particular piece of property was truly necessary.
This is especially true here, where defendants presented evidence that, during the negotiation phase, they proffered several alternatives to taking their property. The city refused those avenues because to be eligible for the funding it sought, some portion of the ring road project had to consist of a “community donation.” The city decided that to fulfill the community donation portion, it would simply require defendants to unwillingly sacrifice their land. Thus, the city never answered the question whether the particular piece of property was necessary for the purposes stated in its complaint, i.e., safety and welfare. Rather, it is clear only that the taking was a “necessary” means to an end.
The majority further states that “[t]he city is not obligated to show that its plan is the best or only alternative, only that it is a reasonable one.” Ante at 254. Again, a taking agency’s mere claim that the choice was “reasonable” is not conclusive. When defendants challenged public necessity, they put forth evidence that there were alternatives to taking their particular piece of property. Other than a road project plan that incorporated defendants’ property, nothing in the record demonstrates that the city chose defendants’ property *273 in lieu of other alternatives because other alternatives were inferior, or because there were no available alternatives. Thus, the city’s assertion of public necessity is bare. If it is enough for the city to say that it needs a particular piece of property and that its choice is a reasonable one, judicial review of public necessity is essentially foreclosed, and an abuse of discretion could never or only rarely be found.
Under the majority’s rationale, a necessity hearing hardly seems meaningful. The majority accuses my dissent of reversing the burden of proof, but nothing could be further from the truth. If the city is required to do no more than sit back and assert public necessity, what, then, is the hearing’s purpose? Generally, in civil matters, one party begins with the burden of proof and must present evidence in support of its position. The other party must then somehow diminish, rebut, or contest that evidence with evidence of its own. Only then can a trial court decide which party should prevail under the appropriate standard. But the majority’s position allows the following scenario. A property owner disputes public necessity and requests a hearing. At that hearing, the owner puts forth evidence that, if believed, would support his claim that the taking of his particular parcel was not necessary. The taking entity rebuts the allegation not with evidence, but merely by affirming that the taking was necessary. Under the novel rule of law set forth by today’s majority, the taking entity prevails, despite the fact that it produced nothing more than an unsupported assertion of public necessity.
This unquestioning ceding of power is not what was contemplated by the constitutional or statutory prohibitions against the unnecessary taking of private property. Contrary to the majority’s position, a reviewing *274 court has an obligation to determine whether, in the face of evidence to the contrary, the taking entity produced evidence — not assertions — of necessity. And this is true despite the fact that the burden of disproving necessity is on the property owner. When a trial court must determine whether there was an abuse of discretion, defendants raise a compelling argument that the taking entity’s failure to use any discretion at all is, in itself, an abuse of discretion.
Were this case not moot, in the complete absence of trial court findings on necessity, I would remand for the trial court to determine whether the city’s decision to take defendants’ property was based on fraud, error of law, or an abuse of discretion.
III. CONCLUSION
The doctrine of mootness should preclude this Court from reaching the merits of this claim. As such, the city’s appeal should be dismissed. Moreover, the majority’s public necessity analysis dilutes the power and obligation of a reviewing court to protect a private property owner from an unlawful taking by conferring unchecked deference on a taking entity’s declaration of necessity. Accordingly, I dissent.
KELLY, J., concurred with CAVANAGH, J.

 The parties’ nomenclature for the whole project is the “ring road project.” The majority’s assertion, ante at 257, that plaintiff represented “merely” that the “ring road project” was gone, and this meant that the spur road portion is still pending, is not borne out by the facts.

 It is not surprising at all that counsel for plaintiff wants this Court to reverse the decision of the Court of Appeals. See ante at 257. What is surprising is that counsel for plaintiff offered nothing more than this desire in response to the questions that were raised regarding mootness.

 Such a reading is hardly “draconian.” See ante at 257.

 This is contrary to the majority’s assertion that a “lapse of funding .. . happens invariably when there is extended litigation.” Ante at 257 (emphasis added).

 The fact that the trial court based its decision regarding public use on an erroneous legal theory, see ante at 253 n 7, does not negate the fact that the trial court made no findings regarding public necessity.

 Defendants need not claim that plaintiff directly defrauded defendants. Such a task would be difficult in a condemnation case, in which a decision regarding necessity is presumably made before a private property owner even knows of a looming condemnation. Rather, a trial court must determine whether a plaintiffs assertion of necessity was, in a general sense, fraudulently made.

 See also n 8 of this opinion.

 The majority’s suggestion that one of defendants’ proposed alternatives — building the spur road on Wisne’s own land — was unworkable because the spur still would have exited onto Grand River is not useful to resolving the abuse of discretion claim. As an initial matter, without knowing the logistical details, I would not make a factual determination that the alternative was unworkable. But even if the alternative would not have sufficed, defendants offered other alternatives as well. Invalidating one alternative says nothing about whether other alternatives were available, viable, and preferable to the drastic measure of condemnation.