# STATE OF MICHIGAN

# COURT OF APPEALS

In re Application of Encana Oil & Gas re Garfield 36 Pipeline.

JOHN BUGGS and DANIEL BONAMIE,

      Appellants,

v

MICHIGAN PUBLIC SERVICE COMMISSION and DTE MICHIGAN GATHERING HOLDING COMPANY,

      Appellees.

UNPUBLISHED
May 16, 2017

No. 329781
MPSC
LC No. 00-017195

In re Application of Encana Oil & Gas re Beaver Creek Pipeline.

JOHN BUGGS and DANIEL BONAMIE,

      Appellants,

v

MICHIGAN PUBLIC SERVICE COMMISSION and DTE MICHIGAN GATHERING HOLDING COMPANY,

      Appellees.

No. 329909
MPSC
LC No. 00-017196

Before: MARKEY, P.J., and MURPHY and METER, JJ.

PER CURIAM.

-1-

In these consolidated appeals, appellants John Buggs and Daniel Bonamie appeal an order of the Michigan Public Service Commission (PSC) granting applications filed by Encana Oil & Gas, Inc.,[1] to construct and operate natural gas pipelines. We affirm.

## I. BACKGROUND

The PSC's order on appeal is the second order approving construction of natural gas pipelines known as Garfield 36 and Beaver Creek 11. The first order was challenged by appellants, and in *Buggs v Pub Serv Comm*, unpublished opinion per curiam of the Court of Appeals, issued January 13, 2015 (Docket Nos. 315058, 315064), this Court vacated the order and remanded the matter to the PSC for further proceedings, concluding:

> Although the Commission minimally complied with the requirements for approving the applications under Act 9, it failed to follow the independent statutory requirement imposed under MEPA.[2] Because its orders approving the pipelines were unlawfully issued, we vacate those orders and remand for a new necessity determination in both dockets. In making its new determinations of necessity, the Commission shall specifically address the environmental impact as required under the MEPA and the decision in [*State Hwy Comm v Vanderkloot*, 392 Mich 159, 184-190; 220 NW2d 416 (1974) (opinion by WILLIAMS, J.)]. [*Buggs*, unpub op at 11.]

Appellants attempted, for the second time, to intervene in the proceedings before the PSC.[3] The PSC denied the motion to intervene, noting that in an earlier order it concluded that Buggs and Bonamie did not meet the test for intervening and that the earlier order had not been appealed. The PSC also noted that in *Buggs*, *supra*, this Court did not instruct it to grant intervention on remand.

On remand from this Court, the PSC again approved the construction and operation of the natural gas pipelines. The PSC noted that it sought and received additional information regarding the environmental impact of the pipelines and the efforts made by Encana to determine that the pipelines' routes did not displace protected species or associated habitats. The PSC provided a 30-day public comment period after it received the additional information.

The PSC reexamined the evidence and made detailed findings. To provide context for our resolution of these appeals, we quote liberally from the PSC's opinion:

---

[1] Encana assigned its interest in the pipelines to appellee DTE Michigan Gathering Holding Company.

[2] The Michigan Environmental Protection Act, MCL 324.1701 *et seq.*

[3] Buggs and Bonamie first filed a petition to intervene after the PSC entered ex parte orders in January 2013 approving the pipelines. The PSC denied the petition in an order entered on April 16, 2013, and denied reconsideration in an order entered on June 28, 2013. Buggs and Bonamie did not seek leave to appeal the order denying the petition to intervene.

Garfield 36 Pipeline Project

In Case No. U-17195, Encana indicates in its application that the Garfield 36 Pipeline was to be constructed "adjacent to the well pad access road on Michigan Department of Natural Resource[s] (MDNR) land and within county road right of way." January 11, 2013 Application, p. 2. Encana's "Exhibit A" is a map showing the proposed route of the Garfield 36 Pipeline. It depicts a route that closely follows two roads, W. Township Line Road and Naples Road. The proposed route veers off of W. Township Line Road to cut a corner in meeting Naples Road. It then veers off Naples Road in a direct line to the closest gas well pad, State Garfield C4-36. Encana's Exhibit D is an environmental impact assessment regarding the project. It indicates that as the pipeline route leaves the well pad, it follows a well access road for 2,600 feet. Thus, the application and exhibits show that approximately 90% of the proposed route for the Garfield 36 Pipeline runs along already-existing roads, avoiding the need for the creation of new corridors.

The environmental impact assessment discusses the land use and ecology and describes the pipeline route area as primarily mixed deciduous forest and describes the area along the well access road as semi-open forest. Regarding impairment to protected wildlife, the assessment indicates that there are no threatened or endangered species within the proposed easement or along the proposed route to the best of the author's knowledge. Supplemental information filed in this docket on August 6, 2015, indicates that Encana submitted a request to the Michigan State University Michigan Natural Features Inventory (MNFI) requesting a review of the MNFI records regarding the potential presence of a protected species in the vicinity of the well sites and access roads used for the wells to which the proposed pipelines would ultimately be connected. Encana received a Rare Species Review response letter for the well site served by the Garfield 36 Pipeline. The letter stated that, "there are no legally protected or special concern species or other natural features within 1.5 miles of the project site" based on the MNFI database. Dean Farrier, whom Encana hired to prepare the environmental impact assessments, indicated in his August 4, 2015 letter to the Commission that, even though this Rare Species Review response letter was requested regarding the well sites to which the pipelines would ultimately connect, the 1.5 mile radius used in the database search includes the entire Garfield 36 Pipeline route.

In addition to the onsite survey of the well sites and access roads for the potential presence of threatened and endangered species that Mr. Farrier conducted in order to prepare the environmental impact assessments that he submitted to the MDEQ's Office of Oil, Gas and Minerals, Mr. Farrier also conducted both an initial review of the pipeline route for "obvious environmental concerns" as well as a "more thorough onsite survey" of the pipeline route "for the presence of protected species and habitat that might be impacted by pipeline construction." Dean Farrier's August 4, 2015 letter to the Commission, p. 2. He explained that he traveled the entire pipeline route and observed the cover

type and habitat that were present, specifically searching for dense young jack pine stands for the Kirtland's warbler habitat, large high crowning trees, ideal for raptor nests, and "frost pocket" areas where special species might be found. *Id*. Mr. Farrier indicated that his focus was on the potential presence of protected upland species and habitat, including Bald Eagle nests, other raptor nests, Kirtland's warbler habitat, frost pockets and dead trees with cracks or loose bark for bat roosts. *Id*. Mr. Farrier explained that the reason he focused on these protected species and habitats was because of his knowledge of the potential range and location of such species, their habitat, as well as MNFI Rare Species Review letters for other sites having a similar habitat to that along the pipeline route. He explained that he summarized his observations and conclusions regarding the habitat that was present and the absence of protected species within the easement and pipeline route in the environmental impact assessment report he prepared and submitted to the Commission in this matter.

Regarding wetlands and other surface waters, the environmental impact assessment submitted for the Garfield 36 Pipeline project indicates that the proposed route involves one wetland crossing, and further indicates that directional drilling will be used to avoid disturbance to this area. The proposed route includes directional drilling around wetlands for a distance of 1,027 feet. The assessment also provides that the directional drilling and construction activity involved will not result in ground disturbance to the wetland or surface waterbody banks and that a minimum buffer of 50 feet from wetland boundaries will be maintained. It further indicates that the proposed construction activity will not disturb the stream contained in the larger wetland and that a minimum depth of 10 feet will be maintained under the streambed.

Regarding the construction methods employed, Mr. Farrier writes in his environmental impact assessment that the clearing, removal of topsoil, and grading will be limited to a minimum area required for safe and efficient construction. The assessment discusses the procedure for the clearing of large vegetation, such as shrubs and trees, within the pipeline route. The assessment's summary concludes that the route proposed minimally impacts the local ecosystems and land use as it runs along existing corridors and is directionally drilled around the wetland. Therefore, the assessment concludes that the construction of the Garfield 36 Pipeline will not cause any new corridors.

The Commission also considered the public comments filed in this matter regarding the Garfield 36 Pipeline. Specifically, the Commission reviewed the comments the petitioners filed. The petitioners point out in their comments that they had, in their previous filings with the Commission, criticized the environmental impact assessments prepared for the pipeline construction projects on the grounds that Mr. Farrier lacked the credentials to support his claim to be a biologist, claimed no knowledge and checked no inventories regarding protected species, and because the assessments only purported to analyze conditions within the 35-foot easements as opposed to the surrounding vicinity. The comments

also note that the supplement does not discuss forest fragmentation resulting from future development of gas wells for gas production.

Regarding these statements, the Commission notes that Mr. Farrier's supplemental information provides an overview of his education and years of experience conducting surveys for the potential presence of protected species and their habitat, and also explains the lengths he went to in this matter to rule out the potential presence of protected species within the pipeline routes. With regard to the petitioners' criticism that the assessments improperly focus on the impact to the 35-foot easement as opposed to the "surrounding vicinity," the Commission observes that the pipeline installation project considered here does not, in and of itself, have much of an impact on the surrounding vicinity because all of the construction and installation work would legally have been limited to the easement area as opposed to the surrounding vicinity. Finally, a consideration of possible future gas well development for gas production and forest fragmentation resulting from gas production is neither ripe for review nor within the scope of the Commission's jurisdiction in this matter.[2]

The petitioners' comments discuss their affidavits as well as the affidavit of Gary Cooley, which were attached as "exhibits" to a previous petition for intervention and that apparently document past observations of Kirtland's warblers in the petitioners' [backyards] as well as Cooley's observations of two dead Kirtland's warblers in the path of an Encana/DTE power shovel. The pipelines in this matter were initially approved *ex parte*, the Commission has yet to grant the petitioners intervention, and the exhibits the petitioners attached to their various filings were not a part of the initial company application and filing the Commission considered when it originally approved of the pipelines. Thus, the Commission has not considered these affidavits, nor are they a part of the *ex parte* record in this matter. Nevertheless, the Commission notes that the petitioners have never alleged that their [backyards] are located within the 35-foot easement within which the pipelines were constructed. Moreover, the public comments filed do not include Mr. Cooley's basis for concluding that the birds he observed are in fact protected species or that they were presumably harmed because of pipeline construction activity within the proposed pipeline routes. Moreover, Encana's failure to inform DNR or adequately respond to Mr. Cooley's observations is of little consequence here both because the company's subsequent activities presumably occurred after the Commission initially approved construction of the pipelines and because they are outside the scope of this order.

Petitioners also take issue with the timing Mr. Farrier chose to conduct his on-site surveys of the proposed pipeline routes, suggesting that these surveys occurred in either mid-May or January, a time when Kirtland's warblers would not yet have arrived in northern Michigan. As petitioners acknowledge in their comments, the exact day or month during which Mr. Farrier conducted his on-site surveys is unclear. Nevertheless, Mr. Farrier writes that he conducted surveys at each location on two different occasions, both an initial review before Encana's engineers agreed on a proposed route, and a second more thorough

-5-

survey afterwards.  Further, the fact that Mr. Farrier  did not just limit his survey to actual sightings of protected species but also looked for the  presence of dense young jack pines and other natural features that would serve as habitat for  certain the Kirtland's warbler provides the Commission with some assurance that, even in the  event that Mr. Farrier conducted both the  initial review and the more thorough on-site survey  during the winter months when the Kirtland's warbler was outside of Michigan, he would still  have discovered its habitat in undertaking a thorough on-site survey during the winter months  when the protected species was elsewhere.  Thus, the fact that the Commission lacks information  regarding the exact dates that the on-site surveys were conducted is not dispositive on the issue of  whether the proposed project impairs the environment.

Finally, petitioners also criticize the environmental impact assessments submitted because  they suggest that Mr. Farrier ignored wetland and stream areas along the Garfield 36 pipeline  route, which amounted to 1,027 feet that was in the vicinity of the pipeline to be constructed.  As  both DTE Gathering and the petitioners acknowledge, those areas were left undisturbed due to the  use of directional drilling.  Because there was no disturbance to the surface, and no impact to  threatened or endangered species, the Commission finds it reasonable that Mr. Farrier would focus  on the potential presence of protected upland species and habitat.  The Commission is satisfied  based on the information provided in the assessment and supplemental information provided that  the proposed project will not destroy, impair, or pollute wetlands or other surface waters.

Given the fact that 90% of the proposed route follows already existing rural roads, based on  the assessment's determination that there will be no disturbance to wetlands, streams, or other  surface waters, in light of the assessment's conclusion that construction of the pipeline will not  cause any new corridors, and based on the assessment and the supplemental information provided that adequately describes the efforts made and resources used to determine no protected wildlife  exists in the proposed easement or along the proposed route, the Commission finds that the  Garfield 36 Pipeline project as proposed will not impair the environment.

Beaver Creek 11 Pipeline Project

Regarding the Beaver Creek 11 Pipeline project in Case No. U-17196, the application and  exhibits presented show a 3.1 mile route that runs entirely along existing county roads or well  access roads, again avoiding the need to create new corridors.  Encana's application provides that  the Beaver Creek 11 Pipeline "will be constructed adjacent to the well pad access road on  Michigan Department of Natural Resource[s] (MDNR) land and within county road right of way on MDNR land."  January 11, 2013 Application, p. 2.  Encana submitted an environmental impact  assessment as its Exhibit D that indicates the impact on the environment is "minimal."[3]  The  assessment indicates the pipeline route runs primarily through mixed deciduous forest, and that, to  the best of the author's knowledge there are

no threatened or endangered species within the  proposed easement or route.  The assessment further indicates that there are no wetlands or stream  crossings within the proposed route.

Having reviewed the application and supporting exhibits, the Commission further determines  that there is no impairment to the environment resulting from the construction or installation of the  Beaver Creek 11 Pipeline.  The proposed 3.08-mile route runs along county and well access roads  and crosses no wetlands or surface waters.  The environmental impact assessment indicates that  the entire proposed route is adjacent to existing corridors and does not require the creation of new corridors.  It also indicates that the route traverses lands owned by the State of Michigan, with the  exception of one area that is privately owned, where the route is in county right-of-way for King  Road.  The assessment further describes the land through which the proposed route runs as primarily mixed deciduous forest with Sugar Maple, Red Oak, Aspen and Birch being the dominant species.

In the environmental impact assessment, Mr. Farrier explains that there are no threatened or  endangered species within the proposed easement to the best of his knowledge.  Again, Mr. Farrier's August 4, 2015 letter states that the environmental impact assessment process began  with Encana submitting a request to the MNFI staff requesting a review of the MNFI records  regarding the potential presence of protected species in the vicinity of the well sites and access roads used for the wells to which the proposed pipelines would ultimately be connected.   The Rare  Species Review response letter for the Beaver Creek 11 Pipeline stated that it was "highly unlikely  that listed species will be impacted by this activity."  The response letter indicates that the listed  species is a butterfly called Henry's elfin.   Further, Mr. Farrier's August 4, 2015 letter explains that the determinations made in the Rare Species Review response letter related to the protected or  special concern species or other natural features within 1.5 miles of the proposed well site, which  would include 56% of the Beaver Creek 11 pipeline route.  As with the Garfield 36 Pipeline, Mr. Farrier again indicates in his August 4, 2015 letter that he conducted two reviews of the  pipeline route, an initial review of the route for "obvious environmental concerns" and a more thorough onsite-survey of the pipeline route for the presence of protected species and habitat that  might be impacted by pipeline construction.   As with the Garfield 36 Pipeline, Mr. Farrier  conducted his on-site survey by traveling the entire pipeline route and observing the cover type  and habitat present.  Again, the focus was on the potential presence of protected upland species and habitat.  Mr. Farrier's observations led him to conclude in the environmental impact assessment that no protected wildlife is known to exist within the proposed route.

Mr. Farrier discusses in the environmental impact assessment the construction methods to be  used, explaining that the clearing, removal of topsoil, and grading will be limited to the minimum area required for safe and efficient construction and further setting forth the procedure for the  removal of large vegetation such as trees and shrubs.  It also discusses the method for excavating

and sloping the trench-line or ditch, and explains that gaps will be made in subsoil stockpiles so as to avoid ponding or excessive diversion of natural runoff during storm events in addition to implementation of erosion and sedimentation permit conditions, where applicable, and best management practices. The assessment's description of the construction methods further provides that, after construction, the workspace will be graded as near as possible to the pre-construction contours and/or restored in accordance with Crawford County Road Commission permit requirements and natural runoff and drainage patterns will be restored. In addition, permanent erosion control measures will be installed and all disturbed workspace will be reseeded. Again, as with the assessment for the Garfield 36 Pipeline, Mr. Farrier's environmental impact assessment for the Beaver Creek 11 Pipeline concludes by indicating that the proposed route minimally impacts the local ecosystems and land use, and that the construction of this pipeline will not cause any new corridors.

The Commission, having considered the applications and accompanying environmental impact assessment submitted as well as the supplemental information provided by Mr. Farrier, concludes that the construction and installation of the Beaver Creek 11 Pipeline as proposed does not impair the environment. The Commission's findings and conclusions that it articulates in this order with respect to petitioners' filed comments apply equally to both the Garfield 36 and the Beaver Creek 11 pipeline applications. Having considered the record in this matter, the Commission is satisfied that competent, material, and substantial evidence on the whole record supports the Commission's conclusion that environmental impairment has not been established.

The Commission further notes that the remaining criteria that the Court instructed the Commission to consider on remand, i.e. "whether there was a feasible and prudent alternative to the impairment; and, whether the impairment was consistent with the promotion of the public health, safety, and welfare in light of the state's paramount concern for the protection of its natural resources from pollution, impairment or destruction" pertain to an agency finding that impairment to the environment has occurred. Here, however, the Commission concludes, based on the record before it, that the proposed pipeline projects did not impair the environment. Accordingly, the Commission need not consider feasible and prudent alternatives to the impairment, or whether the impairment was consistent with the promotion of the public health, safety, and welfare in light of the state's paramount concern for the protection of its natural resources. For the reasons articulated in this order, the Commission finds that the proposed Garfield 36 and Beaver Creek 11 Pipelines will serve the public convenience and necessity, and that *ex parte* approval is appropriate.

---

[2] The Commission notes that, although petitioners alleged in their various filings with the Commission that the pipelines would serve as "bait" inviting the construction and addition of new gas wells in the area, the regulation of gas wells, or any potential impairment to the environment caused by hydraulic fracturing in

Michigan is beyond the purview of the Commission. The Commission lacks the statutory authority to regulate hydraulic fracturing, or the drilling of gas wells in Michigan. That authority, and the concomitant environmental obligations that it engenders, rests with the State Supervisor of Wells and the Department of Environmental Quality. Here, the Commission's sole concern on remand is the effect of the pipelines' construction and operation on the environment and the state's natural resources.

[3] It is important to note that Mr. Farrier's observations that the proposed pipeline projects have a minimal impact on the environment are not the same as a Commission finding that there is no impairment to the environment. The Commission applies the plain meaning to these terms and further notes that Mr. Farrier's determination that the proposed routes minimally impact local ecosystems and land use supports its conclusion that the projects as proposed do not impair the environment.

_____

Appellants claimed an appeal from each PSC order and this Court consolidated the appeals for hearing and decision.

## II. STANDARD OF REVIEW

Pursuant to MCL 462.25, all rates, fares, charges, classification and joint rates, regulations, practices, and services prescribed by the PSC are presumed, prima facie, to be lawful and reasonable. See *Mich Consol Gas Co v Pub Serv Comm*, 389 Mich 624, 635-636; 209 NW2d 210 (1973). A party aggrieved by an order of the PSC has the burden of proving by clear and satisfactory evidence that the order is unlawful or unreasonable. MCL 462.26(8). A final order of the PSC must be authorized by law and be supported by competent, material, and substantial evidence. Const 1963, art 6, § 28; *Attorney Gen v Pub Serv Comm*, 165 Mich App 230, 235; 418 NW2d 660 (1987).

We give due deference to the PSC's administrative expertise, and we will not substitute our judgment for that of the PSC. *Attorney Gen v Pub Serv Comm No 2*, 237 Mich App 82, 88; 602 NW2d 225 (1999). We give respectful consideration to the PSC's construction of a statute that the PSC is empowered to execute, and we will not overrule that construction absent cogent reasons. *In re Complaint of Rovas Against SBC Mich*, 482 Mich 90, 103; 754 NW2d 259 (2008). If the language of a statute is vague or obscure, the PSC's construction serves as an aid to determining the legislative intent, and will be given weight if it does not conflict with the language of the statute or the purpose of the Legislature. *Id*. at 103, 108. However, the construction given to a statute by the PSC is not binding on us. *Id*. at 103. "Whether the PSC exceeded the scope of its authority is a question of law that we review de novo." *In re Complaint of Pelland Against Ameritech Mich*, 254 Mich App 675, 682; 658 NW2d 849 (2003).

## III. ANALYSIS

Appellants argue that the PSC erred by denying their second attempt to intervene. Appellants assert that this Court's decision vacating the PSC's previous orders approving the

applications for the pipelines vacated the PSC's previous order denying the first motion to intervene. Appellants also assert that their interests were affected by the pipelines and they were entitled to intervene on that basis.

A lower court or tribunal must strictly comply with an appellate court's instructions on remand. *K & K Constr, Inc v Dep't of Environmental Quality*, 267 Mich App 523, 544-545; 705 NW2d 365 (2005).

Appellants did not appeal the PSC's order denying their first motion to intervene. In *Buggs*, *supra*, this Court vacated the PSC's orders granting the applications to construct the pipelines and remanded the matter to the PSC for further consideration pursuant to applicable requirements, but did not disturb the PSC's order denying appellants' motion to intervene. Appellants' assertion that by vacating the PSC's orders granting the applications this Court also vacated the PSC's order denying their motion to intervene is without factual or legal support. An appellate argument must be supported by citation to appropriate authority or policy. MCR 7.212(C)(7); *Woods v SLB Prop Mgt, LLC*, 277 Mich App 622, 626-627; 750 NW2d 228 (2008) (no citation of authority for assertion that party entitled to evidentiary hearing). In addition, in the order denying appellants' second motion to intervene, the PSC reviewed appellants' position but found that no subsequent developments required it to change its previous conclusion regarding the timeliness of appellants' motion. We find no basis for appellate relief.

Next, appellants argue that the PSC, when conducting its environmental impact review, should have considered the environmental and forest-fragmenting effects in the vicinity of the lines and not simply within the routes and the corridors surrounding the routes.

In its initial decision, this Court held that the PSC failed to address the environmental impact of the pipelines when making its initial review of the applications. *Buggs*, unpub op at 9-11. The *Buggs* Court vacated the PSC's orders approving the applications and remanded this matter with instructions that the PSC "specifically address the environmental impact as required under the MEPA and the decision in *State Hwy Comm*, 392 Mich at 184-190 (opinion by WILLIAMS, J.)." *Buggs*, unpub op at 11.

On remand, the PSC reexamined the Environmental Impact Assessments (EIAs) submitted by Encana with the original applications, and requested and received supplemental information regarding the environmental impact of the pipelines. Thereafter, the PSC discussed the evidence as it applied to each pipeline and concluded that neither pipeline would have a negative impact on the environment. The PSC specifically noted the parameters of the remand as constructed by this Court. The PSC noted appellants' comments regarding the environmental impact on the vicinity surrounding each pipeline, as well as the risk of forest fragmentation resulting from future construction. The PSC concluded that the impact on the vicinity around each pipeline would be minimal because construction was limited to the easement area, and that the topic of future forest fragmentation was neither ripe for review nor within the PSC's jurisdiction.

Appellants assert that the PSC erred by failing to consider the environmental impact in the vicinity of the pipelines, and cite what they characterize as the "federal vicinity rule" as stated in 18 CFR 380.12(e)(5). This argument is without merit. The PSC conducted proceedings

as directed by this Court on remand. Neither MEPA nor the *State Hwy Comm* decision required the PSC to consider the federal vicinity rule when conducting its analysis. The PSC was required to strictly comply with this Court's instructions on remand, *K & K Constr*, 267 Mich App at 544-545, and did so. Nothing more was required.

Next, appellants argue that Encana's EIAs were inadequate because they failed to detect the presence of Kirtland Warblers, a bird in the area. The contend that Dean Farrier, the biologist who conducted the EIAs, was not put forward as an expert and did not conduct a complete and competent search on which the PSC could properly rely.

The law-of-the-case doctrine provides that an appellate ruling on a particular issue binds the appellate court and all lower tribunals with regard to that issue. *Reeves v Cincinnati, Inc (After Remand)*, 208 Mich App 556, 559; 528 NW2d 787 (1995). A question of law decided by an appellate court will not be decided differently on remand or in a subsequent appeal in the same case when the material facts remain the same. *Id*. "The doctrine applies to questions specifically decided in an earlier decision and to questions necessarily determined to arrive at that decision." *Webb v Smith (After Second Remand)*, 224 Mich App 203, 209; 568 NW2d 378 (1997). Whether the law-of-the-case doctrine applies is a question of law that we review de novo. *Ashker v Ford Motor Co*, 245 Mich App 9, 13; 627 NW2d 1 (2001).

In their appeal of the PSC's initial orders approving Encana's pipeline applications, appellants argued that Farrier's qualifications, and therefore his EIAs, were insufficient to allow the PSC to make adequate findings for an analysis of the environmental impact of the pipeline projects. The *Buggs* Court rejected this argument, holding:

> Buggs and Bonamie argue that Farrier's environmental impact assessments were insufficient to allow the Commission to make the requisite findings required by the MEPA. They claim that the assessments themselves should have caused the Commission to realize that they were inadequate on their face: Farrier analyzed the impact within the proposed easement, but did not include the impact on the environment in the vicinity; Farrier professed not to know of protected or endangered species, but did not certify that there were none; and Farrier claimed to be a biologist, but listed no supporting credentials. They also assert that the assessments were not signed or dated. However, the cover pages bore a date of January 2013 and indicated that they were prepared by Farrier. Buggs and Bonamie cite no authority that speaks to the requisite sufficiency of proofs on which the Commission must base its decision. The assessments described the routes along existing corridors, indicated that to the best of Farrier's knowledge "there were no threatened or endangered species within the proposed easements" or "along the proposed routes," described the clearing that would take place, and represented that the "workspace will be graded as near as possible to pre-construction contours and/or restored in accordance with Kalkaska County Road Commission permit requirements, and natural runoff and drainage patterns will be restored. All existing improvements, such as fences, gates, bar ditches, and beaver deceivers, will be maintained and repaired to as good as or better than pre-construction conditions. Permanent erosion control measures will be installed, and all disturbed workspace will be reseeded."

Although Buggs and Bonamie's claims that the Kirtland Warbler is protected or endangered and that its habitat would be affected are troubling, allegations to this effect were not before the Commission at the time it reviewed the applications. Moreover, allegations that Encana Oil intended to add more pipelines that would create new corridors would seem to be pertinent to future applications for pipeline approval, but not to the lines at issue. While the Commission might have been inclined to seek more information if cognizant of the requirement that it assess whether there were feasible and prudent alternatives and whether the conduct is consistent with the promotion of the public health, safety, and welfare in light of the state's paramount concern for the protection of its natural resources from pollution, impairment, or destruction, the representations made by Farrier in the Assessments were not inherently suspect such that they could not be deemed substantial evidence on the whole record to support the Commission's findings. [*Buggs*, unpub op at 10-11.]

In its opinion on remand, the PSC noted that appellants had claimed that Farrier lacked the credentials to allow his EIAs, which were supplemented with further information and analysis, to be considered credible, and again found Farrier to be credible and his EIAs reliable.

The holding of the *Buggs* Court controlled on remand. At issue in the original appeal was whether the PSC conducted the required environmental impact analysis before granting Encana's applications to build the pipelines. As noted, this Court held that the PSC did not do so, and consequently vacated the PSC's orders and remanded for further proceedings. *Buggs*, unpub op at 11. However, the *Buggs* Court held that Farrier's EIAs were substantial evidence on which the PSC was entitled to rely. *Id*. at 10-11. Thus, the issue raised by appellants in these appeals was raised and decided in the previous appeal. The holding of the *Buggs* Court was binding on remand under the law-of-the-case doctrine and we find no error requiring reversal.

Finally, appellants argue that the PSC should have considered and found credible information contained in the second affidavit from Gary Cooley, who averred that he saw dead Kirtland's Warblers at or near a pipeline construction site.

In *Buggs*, this Court noted, in ruling that Farrier's EIAs were to be viewed as competent evidence, that appellants' claim that two Kirtland's Warblers were found dead at Encana's excavation site was not before the PSC at the time the PSC considered Encana's applications to build the pipelines. *Buggs*, unpub op at 10. Subsequently, on remand, the PSC found that because appellants had not been granted intervenor status, the affidavit was not part of the record before it. We find no error requiring reversal with regard to this finding.[4]

---

[4] Appellants insist that the affidavit should have been considered as part of the public commenting process. However, it is unreasonable to hold that the PSC must rule upon or take into explicit consideration every single comment raised by members of the public. At any rate, the fact remains that the PSC's order was supported by competent, material, and substantial evidence on the whole record.

Affirmed.

/s/ Jane E. Markey
/s/ William B. Murphy
/s/ Patrick M. Meter